Jan CHAMBERS, on behalf of herself and her minor children, et al., Plaintiffs,

v.

Ann KLEIN, Commissioner, Department of Institutions and Agencies, State of New Jersey, et al., Defendants.

Civ. No. 76–1286.

United States District Court, D. New Jersey.

Aug. 25, 1976.

---

Joan Vermeulen, Essex-Newark Legal Services, Newark, N.J., for plaintiffs.

Richard M. Hluchan, Dep. Atty. Gen., Trenton, N.J., Howard Pfeffer, Essex County Welfare Bd. Legal Dept., Richard T. Philips, Asst. U. S. Atty., Newark, N.J., for defendants.

## OPINION

LACEY, District Judge.

This class action has been brought to challenge 42 C.F.R. § 232.10 promulgated by the United States Department of Health, Education and Welfare (HEW) and § 210, Appendix D, Public Assistance Manual (PAM) established by the Department of Institutions and Agencies of the State of New Jersey (I & A), requiring applicants for or recipients of federal Aid to Families with Dependent Children (AFDC), 42 U.S.C. §§ 601–610, to obtain and supply social security numbers for all family members as a condition of eligibility for assistance. Plaintiffs Jan Chambers (Chambers) and Sharon Epps (Epps), who were formerly recipients of AFDC benefits, sue on behalf of themselves, their minor children and all others similarly situated pursuant to Fed.R. Civ.P. 23. Defendants herein are the Commissioner of I & A; the Director of the Division of Public Welfare of I & A; the Director of the Essex County Welfare Board; the Director of the Monmouth County Welfare Board; and the Secretary of HEW.

This action has been brought under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983; directly under certain amendments to the federal Constitution; and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. It is stated that the court has subject matter jurisdiction over the suit pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4), and 1361.

## FACTUAL BACKGROUND

The facts relating to this action are set forth in the Verified Complaint, as amended, and Agreed Stipulations of Fact filed herein by the parties.

Sometime in early March 1976, Chambers entered East Orange General Hospital. She did not notify the Essex County Welfare Board that she was going to enter the hospital. During her stay in the hospital, Chambers' residence was visited by a caseworker as part of a regularly scheduled redetermination of eligibility for AFDC benefits. Apparently, the caseworker was not informed that Chambers had entered the hospital because, upon her return to her residence, she found a written Notice of Intention to Suspend or Terminate Assistance, dated March 5, 1976 (Notice).

The Notice indicated that her AFDC grant would be terminated on April 1, 1976 because of her failure to contact the Essex County Welfare Board as requested in a letter sent to her on March 3, 1976. Since the Essex County Welfare Board was not informed that Chambers was in the hospital, the letter apparently requested that she contact the Essex County Welfare Board because she could not be located. In any event, the Notice stated the following:

> You have the right to request a fair hearing before a representative of the New Jersey Department of Institutions and Agencies. If you should request a fair hearing within fifteen (15) days of the mailing date of this notice of termination of your assistance as stated above, assistance will be continued until the fair hearing unless you notify the county welfare board that you do not desire continued assistance.
>
> At the hearing a determination will be made whether or not you will be entitled to continue receiving assistance until a written fair hearing decision is issued. If you are found so entitled, and choose to continue receiving assistance and lose your appeal, the overpayment in assistance may be recovered from any assistance you remain eligible to receive or from future assistance payments.

Chambers, however, did not seek a fair hearing and on March 31, 1976 her AFDC benefits were terminated. It is noted that prior to March 31, 1976, Chambers contacted and orally explained her absence to the Essex County Welfare Board. Notwithstanding, in view of her failure to halt the termination process through a request for a fair hearing, all AFDC assistance to Chambers and her children ceased on that date.

In early April 1976, a caseworker visited Chambers to assist her in reapplying for AFDC benefits. During the visit she was informed that she would have to obtain and supply to the Essex County Welfare Board social security numbers for her three children before AFDC assistance would be restored. Although she provided the Essex County Welfare Board with her social security number, she refused to obtain social security numbers for her children.

On April 14, 1976, Chambers requested a fair hearing as to regulations requiring social security numbers for her children. Chambers was given that hearing on May 4, 1976, at which time she was represented by counsel and challenged the validity of the regulations requiring her to supply social security numbers for her children. At the hearing she contended that she was improperly notified of the termination of AFDC benefits because the Notice she had received indicated that the assistance was being terminated because she could not be located, and not because she had failed to supply the Essex County Welfare Board with the aforementioned social security numbers. She also argued that the regulations requiring the social security numbers were invalid in that they were not authorized by the federal statute which they were designed to implement and were in violation of the constitutional right to privacy of her children.

On May 28, 1976, the Director of the Department of Welfare of I & A issued a decision which upheld the validity of the regulation requiring the social security numbers of dependent children. The decision, however, found that, while Chambers' AFDC benefits could be terminated, the

benefits to her children had to be reinstated because the termination as to them was improper pursuant to Circular Letter No. 75–8–12, dated August 27, 1975. Thus, the decision required reinstatement, and back payment, of AFDC benefits to the children but not to Chambers. Chambers asserts that the termination of AFDC benefits to her compelled her to send two of her three children to live with relatives in South Carolina. Since those two children are no longer living with her, she states that she is receiving a single AFDC grant in support of the one child with whom she now resides.

Prior to March 19, 1976, Epps met with her caseworker for a regular redetermination of her eligibility for AFDC benefits. When asked to obtain and supply social security numbers for her children, Epps refused. On March 19, 1976, she was notified in writing that her AFDC assistance would be terminated due to her failure to supply social security numbers for her children to the Monmouth County Welfare Board.

A fair hearing on Epps' case was held on April 15, 1976. At the hearing she challenged the validity of the regulation requiring social security numbers for her children by arguing that the Monmouth County Welfare Board had sufficient means of identifying the children without the social security numbers; that the PAM did not state the reasons for the regulation, nor were the employees of the Monmouth County Welfare Board able to explain the reasons; and that the regulation violated the constitutional right of privacy of her children. A decision was issued on June 18, 1976 which upheld the regulation requiring the social security numbers of her children. The decision determined that Epps was ineligible for AFDC benefits but that her children should continue to receive such assistance. Furthermore, as a result of the aforementioned decision, Epps cannot obtain Medicaid. It is urged that Medicaid benefits are needed because she has a physical problem which must be treated on a regular basis. The nature of her physical condition is such that regular treatment is required for her survival.

On July 13, 1976, Epps was advised that she was

> no longer eligible to continue to receive payments under the program of Aid to Families with Dependent Children because you have failed to apply for Social Security numbers for your children. As per fair hearing decision, you must be removed from the grant, however, your net income must be applied to the children's needs and this makes you financially ineligible.

Epps is employed by Monmouth County and has a gross bi-monthly income of $229. Thus, under the above notification it appears that AFDC benefits to Epps are being terminated because of her failure to obtain social security numbers for her children, and that AFDC benefits to her children are being terminated because of her employment.

On July 16 and 20, 1976, Epps requested another fair hearing with respect to July 13, 1976 notification, which has not yet been held. It should be noted that she does not intend to challenge the requirement of social security numbers for her children at the next hearing.

The Verified Complaint, as amended, alleges that 45 C.F.R. § 232.10 imposes an additional eligibility requirement for AFDC assistance because the federal regulation is inconsistent with 42 U.S.C. § 602(a)(25); that § 210, Appendix D, PAM, as amended by the Circular Letter No. 75–8–12, also imposes an additional eligibility requirement for AFDC assistance and violates the Supremacy Clause of the federal Constitution, because the state regulation is inconsistent with 42 U.S.C. § 602(a)(25); that 45 C.F.R. § 232.10 and § 210, Appendix D, PAM, as promulgated and enforced, violate plaintiffs' constitutional right to privacy as guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the federal Constitution; that 45 C.F.R. § 232.10 and § 210, Appendix D, PAM, violate Section 7(a)(1) of the Privacy Act of 1974, 5 U.S.C. § 552a note; that 45 C.F.R. § 232.10 and § 210, Appendix D, PAM, violate the equal protection clauses of the Fifth and Four-

teenth Amendments to the federal Constitution; that 45 C.F.R. § 232.10 and § 210, Appendix D, PAM, violate plaintiffs' right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution; that the termination of Chambers' AFDC benefits without proper notice violated her right to procedural due process as guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution; and that the termination of Chambers' AFDC assistance without affording her an opportunity for a preliminary hearing with officials of the County Welfare Board violated the mandate of the New Jersey Administrative Code, N.J.A.C. 10:81–24.12.

Plaintiffs request class action certification; interim and permanent injunctive relief;[1] a declaratory judgment; and a writ of mandamus compelling the Secretary of HEW to refuse to enforce 45 C.F.R. § 232.10. On July 2, 1976 this court denied plaintiffs' application for a temporary restraining order. Plaintiffs on August 12, 1976, renewed their request for a temporary restraining order, which was denied by the Honorable John F. Gerry. This matter is now before the court on plaintiffs' application for a preliminary injunction after a hearing held on July 28, 1976; their motion for class certification;[2] and the motion by the State defendants for an order dismissing the complaint, or for summary judgment, due to lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted with respect to the Seventh and Eighth Causes of Action in the complaint.

## DISCUSSION

AFDC was enacted pursuant to the Social Security Act of 1935, which created three types of programs of financial assistance, namely, old age assistance, aid to the blind, and aid to dependent children. The AFDC program is intended to provide federal financial assistance to the States in their efforts to supply welfare relief for needy children and their relatives. 42 U.S.C. § 601. In that regard, it is financed by the federal government through the expenditure of matching funds to states which decide to participate in the program. See, e. g., *Hagans v. Van Buren*, No. 76–7101 (2d Cir. June 2, 1976). The federal government

1. The Verified Complaint, as amended, does not request the convocation of a three-judge court pursuant to 28 U.S.C. § 2281. However, counsel became aware that a three-judge court might be required to hear the constitutional claims raised against § 210, Appendix D, PAM. See *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Doe v. Beal*, 523 F.2d 611 (3d Cir. 1975); *Murrow v. Clifford*, 502 F.2d 1066 (3d Cir. 1974). In view of that above development, by stipulation dated August 1976, plaintiffs withdrew their request for an injunction to the extent that they sought to restrain the enforcement of § 210, Appendix D, PAM. See, e. g., *Seergy v. Kings County Republican Committee*, 459 F.2d 308, 312 (2d Cir. 1972); *Rosario v. Rockefeller*, 458 F.2d 649, 651–52 (2d Cir. 1972). Accordingly, I address all claims made in the Verified Complaint, as amended, since I perceive no need for a three-judge court. The request for a preliminary injunction remains viable to the extent that it seeks to restrain the enforcement of 42 C.F.R. § 232.10. The claims made by plaintiffs against 42 C.F.R. § 232.10 and § 210, Appendix D, PAM, are in all respects identical. Furthermore, plaintiffs seek injunctive relief with respect to claims which do not involve the federal and state regulations. The relief requested as to the federal regulation does not require the convocation of a three-judge court. See *William Jameson & Co. v. Morgenthau*, 307 U.S. 171, 173–74, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); *Sardino v. Federal Reserve Bank*, 361 F.2d 106, 114–16 (2d Cir. 1966).

It should be noted that the recently enacted P.L. 94–381 which generally abolishes the right to three-judge courts is not applicable to the matter before me because the suit was filed prior to August 12, 1976, the effective date of the new statute.

2. Rule 23(c)(1) mandates that a district court determine whether or not a suit may be maintained as a class action "[as] soon as practicable. . . ." Since the parties have represented to me that, whatever my determination on the application for a preliminary injunction, an appeal will be taken under 28 U.S.C. § 1292(a)(1), I have decided to reserve decision on plaintiffs' motion for class certification until after the Court of Appeals has reviewed my decision on the application for a preliminary injunction. The ultimate disposition of the present application on appeal may eliminate the necessity of deciding plaintiffs' motion for class certification.

allocates funds to states whose programs of assistance have been approved by the Secretary of HEW, 42 U.S.C. § 601; *King v. Smith*, 392 U.S. 309, 316–17, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and meet the requirements of the Act, 42 U.S.C. § 602(a); 45 C.F.R. § 201.2.

In order to obtain AFDC assistance, 42 U.S.C. § 602(a)(25) requires that a state program provide

(A) that, as a condition of eligibility under the plan, each applicant for or recipient of aid shall furnish to the State agency his social security number . . . and (B) that such state agency shall utilize such account numbers, in addition to any other means of identification it may determine to employ in the administration of such plan . . . .

Pursuant to 42 U.S.C. § 1302, the Secretary of HEW adopted the following regulation:

The State plan must provide that:

(a) As a condition of eligibility, each applicant for or recipient of aid will be required:

(1) To furnish to the State or local agency a social security account number, hereinafter referred to as the SSN (or numbers, if more than one has been issued); and

(2) If he cannot furnish a SSN (either because such SSN has not been issued or is not known), to apply for such number through procedures adopted by the State or local agency with the Social Security Administration. If such procedures are not in effect, the applicant or recipient shall apply directly for such number, submit verification of such application, and provide the number upon its receipt.

(b) For new applicants, the requirements of paragraph (a) of this section shall be effective July 1, 1975; and for current recipients, it shall be effective as determined by the State agency but not later than the time of the next redetermination of eligibility required by § 206.-10(a)(9) of this chapter.

(c) The State or local agency will assist the applicant or recipient in making applications for SSNs and will comply with

the procedures and requirements established by the Social Security Administration for application, issuance, and verification of social security account numbers. For purposes of AFDC foster care, the application for the SSN will be made by the State or local agency.

(d) The State or local agency will not deny, delay, or discontinue assistance pending the issuance or verification of such numbers if the applicant or recipient has complied with the requirements of paragraph (a) of this section.

(e) The State or local agency will use such account numbers, in addition to any other means of identification it may determine to employ, in the administration of the plan.

(f) "Applicant" and "recipient" include the caretaker relative, the children, and any other individual whose needs are considered in determining the amount of assistance.

(g) The State or local agency shall notify the applicant or recipient that the furnishing of the SSN is a condition of eligibility for assistance required by section 402(a)(25) of the Social Security Act and that the SSN will be utilized in the administration of the AFDC program.

42 C.F.R. § 232.10. Pursuant to the above regulation, the Director of the Division of Public Welfare of I & A adopted the following state regulation:

. . . The AFDC applicant and recipient (at the time of the redetermination) shall either supply the CWB [County Welfare Board] with the Social Security number of each member of the eligible unit or obtain a Social Security number for any such person who does not already have one. Failure to do so will result in the entire family being declared ineligible for AFDC.

§ 210, Appendix D, PAM. On August 27, 1975, the Director of the Division of Public Welfare of I & A amended the above regulations as follows:

The penalty for the applicant/recipient's refusal to cooperate by not providing or obtaining Social Security numbers is dele-

tion of his/her needs from the AFDC grant; such refusal does *not* result in a finding of ineligibility of the entire family. Cases previously found ineligible because of such noncooperation should be reevaluated immediately. Section 210, Appendix D of the Public Assistance Manual will be revised in the near future to conform with the above.

Circular Letter 75–8–12.

■ At the outset, I note that the Court of Appeals in this Circuit has mandated that "a district court is not permitted to dispose of a case against a party on non-jurisdictional grounds until it first determines that it has jurisdiction over such party. . . ." *Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911, 912 (3d Cir. 1976). However, that Court has also indicated that, on an application for a preliminary injunction, the trial judge should be satisfied that there is a reasonable probability of ultimate success on the question of subject matter jurisdiction before such extraordinary relief is granted. See *Industrial Electronics Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964). Thus, a discussion of the issue of subject matter jurisdiction is especially appropriate where, as here, the pleadings indicate that jurisdiction may be lacking. *Givens v. W. T. Grant Co.*, 457 F.2d 612, 613 n. 2 (2d Cir.), *vacated on other grounds*, 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972). On this issue, defendants contend that the court is without subject matter jurisdiction under 28 U.S.C. § 1331 because the matter in controversy does not exceed the sum of $10,000, exclusive of interest and costs.

■ In an action for an injunction, it has been said that "the measure of jurisdiction is the value of the right sought to be protected by injunctive relief." *Spock v. David*, 469 F.2d 1047, 1052 (3d Cir. 1972). See also *Spock v. David*, 502 F.2d 953 (3d Cir. 1974), rev'd on other grounds sub nom., *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505, 44 U.S.L.W. 4380 (1976). The plaintiffs herein argue that the jurisdictional amount may be satisfied by looking at the future AFDC payments which they would have received had the assistance not been terminated due to the failure of Chambers and Epps to obtain and provide social security numbers for their children. While Chambers and Epps have had AFDC benefits reduced, neither plaintiff has suffered to date a loss in excess of $10,000. Whether or not this court may look to the future loss which may be suffered by plaintiffs in determining the jurisdictional amount required under § 1331 is a question that has not been settled by the courts. Compare *Chaudoin v. Atkinson*, 494 F.2d 1323 (3d Cir. 1974) with *Rosado v. Wyman*, 414 F.2d 170 (2d Cir. 1969). Under the circumstances, I will not dismiss this case for lack of subject matter jurisdiction under § 1331, since plaintiff should be afforded the opportunity to demonstrate that this court has jurisdiction under that statute at final hearing. See *Spock v. David*, 469 F.2d at 1052. Accordingly, I will deny the motion by the State defendants for dismissal for lack of subject matter jurisdiction under § 1331 with leave to renew at final hearing. While the defendant Secretary of HEW has not made a similar motion, he has addressed the issue of subject matter jurisdiction in his brief with respect to § 1331. I apply the reasoning stated above to the argument made by defendant Secretary of HEW as to § 1331.

Since I exercise subject matter jurisdiction under § 1331 for purposes of the application for preliminary injunction, I will not consider the issue raised by the defendant Secretary of HEW that this court lacks jurisdiction over him under 28 U.S.C. § 1361.

■ The State defendants also contend by way of motion that this court lacks subject matter jurisdiction over them under 28 U.S.C. § 1343. They argue that the alleged deprivations of plaintiffs' rights enumerated in the complaint did not occur "under color of State law" because the State defendants have been acting pursuant to the dictates of 42 C.F.R. § 232.10, a federal regulation. However, I reject that argument in view of the fact that the social security numbers were demanded in this

case pursuant to § 210, Appendix D, PAM, a state regulation. Cf. *Glodgett v. Betit*, 368 F.Supp. 211, 215 n. 7 (D.Vt.1973) (3-judge court), *aff'd sub nom.*, *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). But see *Stinson v. Finch*, 317 F.Supp. 581 (N.D.Ga.1970). Accordingly, the State defendants' motion to dismiss for lack of jurisdiction under 28 U.S.C. § 1343 will be denied.

■ I now turn to the question of whether or not plaintiffs are entitled to preliminary relief on any of the causes of action alleged in the Verified Complaint, as amended. In order to obtain such relief, it is settled that the moving party must show a reasonable probability of success on the merits; that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo; that in balancing the interests involved, the harm to its adversary's interests by the granting of a preliminary injunction is outweighed by that which will be sustained by it if such relief is withheld; and that the public interest favors granting the relief sought. *Ammond v. McGahn*, 532 F.2d 325 (3d Cir. 1976); *A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 525 (3d Cir. 1976); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974); *Penn Galvanizing v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972); *Winkleman v. New York Stock Exchange*, 445 F.2d 786, 789 (3d Cir. 1971); *A. L. K. Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761, 763 (3d Cir. 1971); *Mixing Equipment Co. v. Philadelphia Gear, Inc.*, 436 F.2d 1308, 1315 (3d Cir. 1971); *U. S. Steel Corp. v. Fraternal Ass'n of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir. 1970); *Nelson v. Miller*, 373 F.2d 474, 477 (3d Cir.), *cert. denied*, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); *Kontes Glass Co. v. Lab Glass, Inc.*, 373 F.2d 319, 320 (3d Cir. 1967); *Ikirt v. Lee National Corp.*, 358 F.2d 726, 727 (3d Cir. 1966); *Joseph Bancroft & Sons Co. v. Shelly Knitting Mills, Inc.*, 268 F.2d 569, 573–74 (3d Cir. 1959); *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir. 1940). As hereinafter

detailed, it is the opinion of this court that plaintiffs have no probability of success on the merits of their claims. Under the circumstances, even if the plaintiffs' contention of irreparable injury were to be accepted, the utter lack of probability of success at final hearing dictates that a preliminary injunction not issue.

### STATUTORY CLAIMS

Plaintiffs contend that, by requiring parents to obtain social security numbers for their children, 42 C.F.R. § 232.10 and § 210, Appendix D, PAM, impose a requirement on persons who seek AFDC benefits which is not provided for in 42 U.S.C. § 602(a)(25). Thus, it is argued that the federal and state regulations are inconsistent with the federal statute. Furthermore, as to the state regulation, it is claimed that such inconsistency makes the state regulation unlawful under the Supremacy Clause of the federal Constitution.

■ Although 42 U.S.C. § 602(a)(25) makes no reference to children, this does not mean that children are not "recipients", as that term is used in the statute. Indeed, "dependent children" are the primary beneficiaries of the AFDC program. As the Supreme Court noted in *King v. Smith*, 392 U.S. at 313, 88 S.Ct. at 2131 (emphasis added):

> The category singled out for welfare assistance by AFDC is the "dependent child," who is defined in § 406 of the Act . . . as an age-qualified "needy child . . . who has been deprived of parental support or care by reason of death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with" any one of several listed relatives. . . .

See also *Wyman v. James*, 400 U.S. 309, 315, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); *Lewis v. Martin*, 397 U.S. 552, 555, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). Indeed, it cannot be argued that the term "recipients" encompasses only the parent or relative with whom the dependent child lives. That such a parent or relative may also receive an

AFDC grant does not detract from the person whom the AFDC program was designed to aid, namely, the dependent child. It has been noted that

> [t]he very title of the program . . . show[s] that Congress wished to help children through the family structure. The operation of the statute has this effect. From its inception the Act has defined "dependent child" in part by reference to the relatives with whom the child lives. When a "dependent child" is living with relatives, then "aid" also includes payments and medical care to those relatives, including the spouse of the child's parent.

. . .

*Dandridge v. Williams*, 397 U.S. 471, 479, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970). See also *Hagans v. Berger*, 536 F.2d 525 at 528–529 (2d Cir. June 2, 1976). Since the statute is obviously designed to benefit the "dependent child", I cannot accept plaintiffs' argument that the omission of any reference to children or infants in 42 U.S.C. § 602(a)(25) demonstrates a Congressional intent to exempt children who receive AFDC benefits from the requirement of obtaining social security numbers. It is clear to me that the term "recipient" in 42 U.S.C. § 602(a)(25) includes the children for whom the AFDC program was enacted. Moreover, the Social Security Act, as amended, indicates that a dependent child, or any other "applicant" or "recipient" of AFDC benefits, must furnish a social security number for purposes of identification. 42 U.S.C. § 602(a)(25)(B). See also 42 C.F.R. § 232.10(e).

■ In addition, HEW has interpreted the term "recipient" in 42 U.S.C. § 602(a)(25) to include children who are supported by the AFDC program. 42 C.F.R. § 232.10(f). When faced with a problem of statutory construction, courts defer to the interpretation of an administrator charged with implementing or enforcing the particular statute in question. See, e. g., *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Brennan v. Owensboro-Daviess County Hospital*, 523 F.2d 1013, 1028 (6th Cir. 1975); *West*

*Virginia Div. of Izaak Walton League v. Butz*, 522 F.2d 945, 950 (4th Cir. 1975); *Intercounty Construction Co. v. Occupational Safety and Health Review Comm'n*, 522 F.2d 777, 779 (4th Cir. 1975); *Lucas Coal Co. v. Interior Board of Mine Operations Appeals*, 522 F.2d 581, 584 (3d Cir. 1975); *Budd Co. v. Occupational Safety and Health Review Comm'n*, 513 F.2d 201, 204 (3d Cir. 1975). Additionally, it has been held that the administrative interpretation of a statute should be followed unless there are compelling indications that it is erroneous. See, e. g., *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Old Ben Coal Corp. v. Interior Board of Mine Operations Appeals*, 523 F.2d 25, 36 (7th Cir. 1975). Cf. *Satty v. Nashville Gas Co.*, 522 F.2d 850, 854 (6th Cir. 1975). Such considerations are no less applicable where the Social Security Act has been the subject of administrative interpretation by a state agency. See, e. g., *New York State Dep't of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Williams v. Wohlgemuth*, 540 F.2d 163 at 170, (3d Cir. 1976).

In the matter at bar, plaintiffs suggest that no mention of children is made in 42 U.S.C. § 602(a)(25); therefore, 42 C.F.R. § 232.10, which requires social security numbers for children receiving AFDC assistance, is inconsistent with the statute. They urge, as noted above, that the absence of an express reference to children in the statute demonstrates a Congressional intent to exclude children from the command of the statute. They argue that such Congressional intent is further evident from the specific reference to children in other provisions of the AFDC legislation. 42 U.S.C. § 602(a)(25)(B). However, my own reading of cases construing federal legislation creating the AFDC program indicates that the federal regulation in question is not inconsistent with 42 U.S.C. § 602(a)(25). Additionally, plaintiffs' view of the federal statute fails to convince me that I should not give deference to, and accept, the administrative interpretation of the statute embodied in 42 C.F.R. § 232.10 and § 210, Appendix D, PAM.

■ Accordingly, I must conclude that 42 C.F.R. § 232.10 and § 210, Appendix D, PAM, are not inconsistent with 42 U.S.C. § 602(a)(25), and do not impose a requirement not provided for in the statute. Similarly, § 210, Appendix D, PAM, does not violate the Supremacy Clause of the federal Constitution.

Plaintiffs also argue that the denial of AFDC benefits because of the failure to obtain and disclose social security numbers violates Section 7 of the Privacy Act of 1974, P.L. 93–579, which provides:

(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

(2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

(A) any disclosure which is required by Federal statute, or

(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

(b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

Plaintiffs recognize that the disclosure of social security numbers mandated by 42 C.F.R. § 232.10 and § 210, Appendix D, PAM, is required pursuant to a federal statute, and hence within the exception provided for in Section 7(a)(2)(A) of the Privacy Act. The narrow issue presented by this statutory claim is whether or not the failure of the State to inform Epps and Chambers of the uses to be made of the social security numbers violated Section 7(b) of the stat-ute. It should be noted that plaintiffs do not claim that they were not told whether the disclosure of the social security numbers was mandatory or voluntary, and by what statutory or other authority the numbers were solicited, as required by Section 7(b).

The facts in this case reveal that at no time were either Chambers or Epps told what uses would be made of the social security numbers demanded of them on behalf of their children. The State claims, and it is plain from the facts before me, that it is currently making no use of the social security numbers it requires from welfare recipients. Of course, the State contends that the numbers are required because of the dictates of 42 U.S.C. § 602(a)(25) and 42 C.F.R. § 232.10. In response, plaintiffs urge that the State should not demand social security numbers as a prerequisite to AFDC assistance unless it plans to utilize the numbers. Simply stated, the facts of this case reveal that the State has required the social security numbers because of its obligation under federal law, but has failed to use them.

By letter dated August 10, 1976, I brought to counsels' attention the observation that the failure of the State to utilize social security numbers appeared to be in conflict with 42 U.S.C. § 602(a)(25)(B), quite aside from the claim raised by plaintiffs under the Privacy Act. Counsel for the State defendants responded by letter dated August 13, 1976, and indicated that New Jersey has no current plans to utilize the social security numbers in its AFDC program in the near future. Counsel suggested therein that the State does not utilize the numbers because HEW has issued no directive indicating how these numbers are to be used. He also suggested that HEW and the State of New Jersey should be given an opportunity to establish a means whereby social security numbers could be utilized, in view of the fact that 42 U.S.C. § 602(a)(25)(A) and (B) became effective on January 4, 1975. In a letter dated August 13, 1976, counsel for the Secretary of HEW indicated that procedures are available to terminate federal funds to those states who substantially fail to comply with the provi-

sions of 42 U.S.C. §§ 601–610. See 42 U.S.C. § 604; 45 C.F.R. § 201.6. He also indicated, however, that such procedures would not be put into effect until reasonable efforts were made by the Secretary of HEW to resolve problems of compliance with State officials. He too stressed the recent enactment of 42 U.S.C. § 602(a)(25)(B), and stated that he has been informed by HEW that it will provide technical assistance to states which are not presently utilizing social security numbers in the administration of their AFDC programs.

 Under the circumstances of this case, I must conclude that plaintiffs' rights under Section 7(b) of the Privacy Act have not been violated. In that regard, I place particular weight upon the fact that 42 C.F.R. § 232.10 and § 210 Appendix D, PAM, were issued pursuant to the authorization of a federal statute requiring the disclosure of social security numbers. Hence, the disclosure of the social security numbers under the state and federal regulations comes within the exception set forth in Section 7(a)(2)(A) of the Privacy Act. Furthermore, there is no question that the State defendants complied with Section 7(b) of the Privacy Act except to the extent that Epps and Chambers were not told what uses would be made of their children's social security numbers. However, as indicated above, they were not told to what uses the social security numbers would be put simply because the State is not at present utilizing such numbers. I reject the argument that the social security numbers should not have been demanded from Epps and Chambers unless a use of them was contemplated. It was fortuitous that the demand for the social security numbers was made at a time when full implementation of the mandate of 42 U.S.C. § 602(a)(25) had not yet occurred. Under the circumstances of this case, even assuming *arguendo* that a violation of Section 7(b) of the Privacy Act is made out, I do not feel that ultimately injunctive relief is indicated. The State of New Jersey is not eligible for federal funding under the AFDC program unless it obtains social security numbers from persons seeking such assistance. The complaint requests that an injunction be entered enjoining the defendants from enforcing, applying, executing and implementing the federal and state regulations which are the subject of the suit. On balance, I do not feel that a violation of plaintiffs' rights under Section 7(b) of the Privacy Act warrants the issuance of an injunction against regulations which properly implement a statutory requirement for the AFDC program. Obviously, an injunction prohibiting the State defendants from carrying out the regulations in dispute would put in jeopardy funding which the State of New Jersey is receiving under the AFDC program. The issuance of such an injunction having such a far-reaching effect is not warranted, in the opinion of this court, because of a technical violation of the Privacy Act.[3]

## CONSTITUTIONAL CLAIMS

### PRIVACY

 At the forefront of their constitutional attack upon the regulations before me, Chambers and Epps claim that the requirement compelling them to obtain and disclose social security numbers for their children violates the right of privacy enjoyed by them and their children. It is urged that the requirement invades the re-

---

3. Parenthetically, I note that the Privacy Act of 1974 is currently the subject of intense discussion in Congress. The Senate has under consideration the Tax Reform Act of 1976, H.R. 10612. See 122 Cong.Rec. § 12814 (daily ed. July 29, 1976). Section 1211 of H.R. 10612 would effectively repeal the Privacy Act to the extent that the proposed legislation would permit the States to use social security numbers for the administration of any law or program. The Senate has proposed an amendment to H.R. 10612 which would permit the use of social security numbers by State and local governments with respect to general welfare programs, motor vehicle registrations, driver's licenses, and the administration of tax laws. 122 Cong.Rec. §§ 12817, 12823 (daily ed. July 29, 1976). The comments of senators during the debate over H.R. 10612 reflect the concern and need for social security numbers as a means of controlling welfare fraud.

lationship between parent and child in the sense that it interferes with the right of the parent to act in the best interests of the child. Chambers and Epps claim that the best interests of their children are not served by the disclosure of social security numbers for several reasons: first, they fear that social security numbers may be used as a means of facilitating the recordation of a variety of adverse information about the children not connected with the fact that the mother received welfare benefits; second, that such a possibility may deter them from disclosing to a caseworker adverse facts concerning their children during the growth and development of the children for fear that such facts may become part of the record which is identified by the social security numbers; and third, that the children may resent their mothers when they get older and determine that social security numbers were obtained which lead to information indicating that they and their mothers were welfare recipients.

Neither the court nor the parties have discovered any judicial decisions dealing directly with the issue. It is clear, however, that in order to prevail on their right to privacy claim, plaintiffs must show that the determination to withhold social security numbers is within the constitutionally protected right of privacy, and that the state and federal governments have failed to show a compelling interest necessary to permit an infringement of plaintiffs' right to privacy. See, e. g., *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

The right of privacy is not expressly protected by any provision in the federal Constitution. However, the Supreme Court held in *Roe v. Wade, supra*, 410 U.S. at 152, 93 S.Ct. at 726, that the right is subject to constitutional protection.

The Constitution does not explicitly mention any right of privacy. In a line of decisions, however, going back perhaps as far as *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. In varying contexts, the Court of individual Justices have, indeed, found at least the roots of that right in the First Amendment, *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, *Terry v. Ohio*, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *Katz v. United States*, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), see *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, *Griswold v. Connecticut*, 381 U.S., at 484–485, 85 S.Ct. 1678; in the Ninth Amendment, *id.*, at 486, 85 S.Ct. 1678 (Goldberg, J., concurring); or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, see *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). These decisions make it clear that only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937), are included in the guarantee of personal privacy. They also make it clear that the right has some extension to activities relating to marriage, *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, *Skinner v. Oklahoma*, 316 U.S. 535, 541–542, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); contraception, *Eisenstadt v. Baird*, 405 U.S. 438, at 453–454, 92 S.Ct. 1029, 31 L.Ed.2d 349; *id.*, at 460, 463–465, 92 S.Ct. 1029 (White, J., concurring in result); family relationships, *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and child rearing and education, *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), *Meyer v. Nebraska, supra*.

As hereinabove indicated, Chambers and Epps contend that the decision not to obtain

social security numbers for their children is protected from governmental intrusion by the constitutional right to privacy. It is urged that the decision comes within their constitutional right of privacy in that the decision is made in the best interests of the children; and that determinations made by parents in the best interests of their children are part of the child-rearing process, which has been held to be protected by the constitutional right to privacy.

However, the suggestion that the determination not to obtain social security numbers for their children is intimately associated with the child-rearing process does not end the matter. Obviously, any decision made by parents with respect to their children is presumably in the best interests of those children, and within the child-rearing process. However, an argument, based as it is upon a broad interpretation of the words "child-rearing", does not convince this court that the requirement at issue violates or infringes the constitutional right to privacy. It is clear that whether or not a particular activity is within the constitutionally protected right to privacy does not turn upon the label given to the activity by resourceful counsel. That the determination made by Chambers and Epps may be said to come within the family relationship or the child-rearing process does not conclusively establish that the decision is outside the sphere of government regulation. The Supreme Court has never sanctioned such a principle. In *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1966), the Court rejected a challenge to a state statute prohibiting minors from selling newspapers and other literature in public places, brought by a mother who permitted her children to sell religious literature in public. The mother argued that the statute violated her First Amendment right to freedom of religion and Fourteenth Amendment right to raise her children in a manner to be determined by her as the parent. In rejecting both arguments, the Court noted that

the family itself is not beyond regulation in the public interest, as against a claim

of religious liberty. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244; *Davis v. Beason*, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. *People v. Pierson*, 176 N.Y. 201, 68 N.E. 243. The catalogue need not be lengthened. It is sufficient to show what indeed appellant hardly disputes, that the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare; and that this includes, to some extent, matters of conscience and religious conviction.

*Id.* at 166–67, 64 S.Ct. at 442. Furthermore, the decisions of the Supreme Court involving the constitutional right to privacy have not been construed as broadly as plaintiffs suggest. Even under circumstances where it is argued that a particular family activity is protected by the constitutional right of privacy, the courts have held that the activity is protected only if it is "fundamental" and "implicit in the concept of ordered liberty" as stated in *Roe v. Wade*, 410 U.S. at 152, 93 S.Ct. at 726. See *Doe v. Norton*, 365 F.Supp. 65, 74 (D.Conn. 1973) (three-judge court). See also *Burdick v. Miech*, 385 F.Supp. 927, 930 (E.D.Wis. 1974).

I reject the notion that the decision by Epps and Chambers to decline to obtain social security numbers for their children is within their constitutional right of privacy.

Although the decision is arguably within the child-rearing process, the ability to make such a determination free from governmental interference cannot be said to be a "fundamental right" or "implicit in the concept of ordered liberty." Furthermore, even conceding that the decision made by Epps and Chambers with respect to their children is within the child-rearing process, the federal and state regulations requiring social security numbers from their children do not intrude into whatever right of privacy can be said to protect the child-rearing process or the parent-child relationship. Finally, I note that courts have rejected the claim that the compelled disclosure of social security numbers violates a constitutionally protected right to privacy. See *Cantor v. Supreme Court of Pennsylvania*, 353 F.Supp. 1307, 1321–22 (E.D.Pa.1973) (social security number required for license to practice law); *Conant v. Hill*, 326 F.Supp. 25, 26 (E.D.Va.1971) (social security number required for driver's license); *Ostric v. Board of Appeal on Motor Vehicle Liability Policies and Bonds*, 361 Mass. 459, 462, 280 N.E.2d 692, 695 (Sup.Jud.Ct.1972) (social security number required for renewal of driver's license). Since this court does not agree that the requirement of disclosure of social security numbers of children receiving AFDC benefits violates any constitutionally protected right of privacy, there is no need to determine whether or not there is a compelling governmental interest to be served by the federal and state regulations in issue.

## SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

Plaintiffs also argue that 42 C.F.R. § 232.10 and § 210, Appendix D, PAM, violate their right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution in that there is no rational relationship between the purpose of 42 U.S.C. § 602(a)(25) and the regulations. They also contend that the federal and state regulations violate the equal protection clause of the Fifth and Fourteenth Amendments in that social security numbers are only required for chil-

dren, not of working age, whose parents receive federally supported welfare assistance, and not from other children, not of working age, whose parents do not receive such welfare assistance.

Plaintiffs' substantive due process claim is grounded in the assumption that the sole purpose of 42 U.S.C. § 602(a)(25) is to locate absent parents and enforce their support obligations. Thus, they argue that the federal and state regulations under attack herein are not rationally related to the purpose of 42 U.S.C. § 602(a)(25). However, neither case law nor legislative history has been cited by plaintiffs to support the assertion that the only purpose of the statute is to locate absent parents and compel them to fulfill financial obligations owed to their children. Indeed, that assumption is made without the slightest attempt at even logical analysis to support it. In any event, it is this court's view, as hereinbefore stated, that the term "recipient" as used in 42 U.S.C. § 602(a)(25) includes children who receive AFDC assistance. Furthermore, the Secretary of HEW has interpreted "applicant" and "recipient", as those words are used in the statute, to include "the caretaker relative, the children, and any other individual whose needs are considered in determining the amount of assistance." 42 C.F.R. § 232.10(f). As also noted above, this court is instructed to give deference to the administrative interpretation. Given plaintiffs' total failure to support their view of the purpose of the statute, and the inclusion of children within the meaning of the statute, plaintiffs are not likely to prevail on the claim that the federal and state regulations are not rationally related to the purpose of the statute.

Similarly, plaintiffs are not likely to succeed on their equal protection claim at final hearing. They argue, as noted above, that their right to equal protection has been violated by the federal and state regulations in that social security numbers are required for children, not of working age, whose parents are recipients of federal welfare benefits, and not from children, not of working age, whose parents do not receive

such assistance. Plaintiffs strenuously urge that the regulations at issue herein result in an invidious discrimination or classification devoid of any rational basis.

It is clear that a statute which creates such distinctions will violate the constitutional right to equal protection of the laws if there are no rational bases for such distinctions. See *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). However, plaintiffs have failed to discuss another essential element to the proper application of the equal protection formula. A valid claim under the equal protection clause of either the Fifth or Fourteenth Amendments will be sustained if it is shown that the complainant is similarly situated with other persons distinguished by the statutory classification. See, e. g., *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920); Note, *Developments in the Law—Equal Protection*, 82 Harv.L.Rev. 1065, 1076 (1969). Chambers and Epps have failed to argue in any manner that their children are similarly situated with children of parents who do not receive welfare assistance. It is true that the complaint asserts that both groups of children are not of working age. Beyond that allegation, however, there is no similarity between the children whose parents receive welfare benefits and those children whose parents do not. Indeed, there is an essential dissimilarity between the two groups of children: children who are required to produce social security numbers are actually receiving an AFDC grant themselves, while the other group of children are obviously not receiving any welfare monies. Thus, the mere fact that certain children who directly receive welfare assistance, and other children who receive no such assistance, are not of working age is not enough to establish that they are similarly situated for equal protection purposes.

The equal protection claim in the complaint herein suggests that the only dissimilarity exists between parents who receive welfare assistance and parents who do not; and that the children of these parents are similarly situated in the broad sense of not being of working age. As indicated above, the claim ignores an essential difference between the two groups of children, namely, that those children whose parents are receiving AFDC assistance are also themselves direct recipients of such assistance. The dissimilarity engendered by the fact that the children before me are receiving AFDC assistance is controlling when viewed against the backdrop of the purpose of 42 U.S.C. § 602(a)(25). See generally, Tussman & tenBrock, *The Equal Protection of the Laws*, 37 Calif.L.Rev. 341, 346 (1949). As hereinbefore noted, that purpose is to permit the convenient identification of persons receiving AFDC benefits. That the children before me are themselves receiving such assistance constitutes the critical lack of similarity between those children and other children, not of working age, who are not welfare recipients.

By way of comparison, an equal protection claim would be stated in a complaint if it were charged that a statute or regulation required that male children receiving AFDC assistance furnish social security numbers but did not impose the same obligation on female children also receiving AFDC benefits. Since the equal protection claim at bar does not demonstrate that the federal and state regulations draw a distinction between children who are similarly situated, it is unlikely that the claim will be sustained at final hearing. Since the children before me are not similarly situated with other children, not of working age, the contention that the distinction between the children urged in the complaint has no rational basis does not merit consideration.

## PROCEDURAL DUE PROCESS

Chambers claims that her rights to procedural due process under the Fifth and Fourteenth Amendments were violated when her AFDC benefits were terminated without prior notice that the termination was ordered because of her refusal to ob-

tain and submit social security numbers for her children. Her claim rests upon the decision of the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), wherein it was held that AFDC benefits could not be terminated without prior notice and an opportunity to be heard. Chambers does not attack the fair hearing which she attended on May 4, 1976.

It will be recalled that AFDC benefits to Chambers and her children were terminated because of the inability of the Essex County Welfare Board to locate her. Of course, Chambers concedes that this was due to her failure to notify the Essex County Welfare Board that she would be hospitalized. Thus, her AFDC benefits had not been terminated because of her failure to obtain and supply social security numbers for her children.

It will also be recalled that the Notice which had been forwarded to her residence essentially indicated that all AFDC benefits would be terminated because of the inability of the Welfare authorities to locate her. The Notice also informed her that she could request a fair hearing prior to the effective date of termination. Chambers does not challenge the Notice as an adequate means of informing her that AFDC benefits were about to terminate due to the inability of the Essex County Welfare Board to locate her. While Chambers asserts that she ultimately contacted the Essex County Welfare Board by telephone and informed them that she had been in the hospital, no request was ever made for a fair hearing. Therefore, all AFDC benefits to Chambers and her children were terminated on March 31, 1976. It should be noted that Chambers does not claim that her telephone communication to the Essex County Welfare Board, informing the authorities of the reason for her absence from home, should have precluded the termination of AFDC benefits. She was obviously aware from the Notice that all AFDC benefits were about to be terminated, and that such termination could be stopped only if she prevailed at a fair hearing. Yet, no fair hearing was ever

requested by her prior to the termination of AFDC benefits on March 31, 1976.

After AFDC benefits had been terminated because of the failure of the Essex County Welfare Board to locate Chambers, she was visited by a caseworker who wanted to assist her in reapplying for AFDC assistance. During the visit the caseworker orally notified Chambers that the Essex County Welfare Board would not renew AFDC benefits unless she obtained and submitted social security numbers for her children.

Certain observations are immediately evident from the above undisputed facts. First, AFDC assistance to Chambers was not terminated because of her failure to obtain and supply social security numbers for her children. The termination occurred because she had gone into the hospital without notifying the welfare authorities that she would be absent from her residence. Second, if she had requested a fair hearing, as indicated in the Notice, prior to the termination, the Essex County Welfare Board may not have stopped the AFDC assistance. Since the social security numbers were not requested until after AFDC benefits to Chambers and her family were terminated, the social security numbers might not have become an obstacle to renewed AFDC assistance had she requested a fair hearing and explained her absence from home. Third, Chambers does not take issue with the fact that the termination hearing was properly conducted and for the reason stated in the Notice.

Under the above circumstances, the court must reject Chambers' procedural due process argument. AFDC benefits to Chambers and her children were not *terminated* due to her failure to obtain social security numbers for her children. At most, it may be said that AFDC benefits were not *renewed* because of her position as to the social security numbers. I cannot understand how Chambers can even complain about the non-renewal of AFDC assistance on the basis of her failure to obtain and supply social security numbers for her children when she might not have been in such a situation had she requested a fair hearing prior to March

31, 1976 with respect to the reason for the proposed termination. And yet she was not concerned enough to request a fair hearing when faced with the certain termination of AFDC assistance due to her failure to inform the Essex County Welfare Board that she would be in the hospital, and therefore would not be at her residence in the event that a caseworker visited her home during her absence.

Furthermore, when a caseworker came to her home in early April to assist her in reapplying for AFDC assistance, she was actually notified that she would have to obtain and supply social security numbers for her children prior to renewal of AFDC benefits. She requested and attended a fair hearing on that issue whereat she was represented by counsel. She does not attack that hearing. Ultimately, Chambers' position is that AFDC benefits should have been renewed before she was given notice of the requirement that she obtain and supply social security numbers for her children. However, under the circumstances of this case, I reject that position. This court must conclude that the dictates of procedural due process were satisfied when she was given notice of the requirement pertaining to social security numbers when she was visited by a caseworker in April 1976 and subsequently requested and participated in a fair hearing. I perceive no constitutional requirement that AFDC assistance to Chambers and her family be reinstated, and the termination process commence anew, when the facts are clear that Chambers put herself in the position of receiving notice of the requirement of social security numbers after AFDC assistance had ceased, and when the record before me fails in all particulars to suggest that the termination occurred because of her failure to supply the social security numbers.

### STATE ADMINISTRATIVE LAW CLAIM

Finally, plaintiffs' claim in their Eighth Cause of Action that the termination of the AFDC assistance violated the official procedure set down in New Jersey Administrative Code § 10:81–24.12 in that they were not afforded the preliminary hearings outlined in that regulation. This claim is without merit. On February 3, 1975, the New Jersey Administrative Code § 10:81–24.12 was superseded by PAM. See 7 N.J.Reg. 105 (March 6, 1975). Since Epps and Chambers appeared at hearings which occurred in April 1976, it is clear that their claim which rests on New Jersey Administrative Code § 10:81–24.12 cannot be sustained. Furthermore, no claim is made that the hearings conducted in April 1976 violated the procedures set forth in PAM. The State defendants' motion to dismiss this Cause of Action for failure to state a claim is granted. However, their motion to dismiss the Seventh Cause of Action is denied. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

For the reasons hereinabove stated, plaintiffs' application for a preliminary injunction, and the motion by the State defendants, are denied.

The foregoing constitutes my findings of fact and conclusions of law.

Counsel for the defendant Secretary of HEW is directed to submit an appropriate form of order within ten days, consented to as to form.