Edward WINKLEMAN, on behalf of himself and all others similarly situated, and Scientific Resources Corporation, Appellants,

v.

NEW YORK STOCK EXCHANGE, on behalf of itself and all of its members.

No. 71–1394.

United States Court of Appeals, Third Circuit.

Argued June 22, 1971.

Decided Aug. 4, 1971.

David Berger, Philadelphia, Pa. (Herbert B. Newberg, H. Laddie Montague, Jr., Joseph R. Lally, Philadelphia, Pa., on the brief), for appellants.

Isaac Shapiro, Milbank, Tweed, Hadley & McCloy, New York City (John R. McConnell, Philadelphia, Pa., William E. Jackson, Russell E. Brooks, New York City, Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellee.

Philip A. Loomis, Jr., Gen. Counsel, S.E.C., Washington, D. C., amicus curiae.

Before VAN DUSEN and ROSENN, Circuit Judges, and KRAFT, District Judge.

## OPINION OF THE COURT

KRAFT, District Judge.

Appellants, Edward Winkleman and Scientific Resources Corporation (Scientific), appeal from the district court's denial of their motion for preliminary injunction and its dismissal of their action against New York Stock Exchange and its members. (Exchange). We shall first review the propriety of the grant by the court below of defendants' motion to dismiss the action for lack of jurisdiction over the subject matter, under F.R.Civ.P. 12(b) (1), since if the dismissal was proper, appellants' motion for preliminary injunction must necessarily have failed.

Count I of appellants' complaint is filed by Scientific, under Sections 4 and 15 of the Clayton Act,[1] for injunctive relief and treble damages for injuries claimed to result from alleged violations by Exchange of Sections 1 and 3 of the Sherman Act[2] and Section 3 of the Clayton Act.[3]

Count II of the complaint is filed by Edward Winkleman, as a class action, asserting as jurisdictional bases diversity of citizenship and involvement of federal questions. It incorporates by reference §§ 2 thru 28 of Count I, but omits incorporation of § 1 in which Scientific invokes jurisdiction under §§ 4 and 15 of the Clayton Act. Count II seeks injunctive relief and such damages as are determined to have been suffered by each class member.

Briefly, the allegations of appellants' complaint[4] essential to our review are that: Scientific, a publicly-held corporation of which Winkleman is a shareholder, applied to the Exchange for listing, was accepted and, since 1964, its stock has been listed and traded under the provisions, inter alia, of the Exchange Listing Agreement, which provides, in part, that Scientific, like other listed issuers " * * * will publish at least once a year and submit to its stockholders * * not later than three months after the close of the last preceding fiscal year of the Corporation a balance sheet as of the end of such fiscal year, and a surplus and income statement for such fiscal year. * * * " Such publication and submission to stockholders were most recently due from Scientific on or before December 30, 1970. Customarily, with Exchange's knowledge, listed issuers delayed, for appropriate times, publication and submission to stockholders of the required annual statements where special circumstances so warranted. During January, 1971, authorized officers of Scientific met and communicated with officers of the Exchange to explain what Scientific claimed were special circumstances which warranted a delay in compliance by Scientific. The Exchange, without warning, suspended all trading in Scientific's stock on February 1, 1971. Thereafter the Exchange informed Scientific that it was considering delisting Scientific's securities, but that upon issuance by Scientific of an acceptable news release relating to the effect of pending transactions on other pertinent financial data the Exchange would permit resumption of trading in Scientific's securities. Scientific prepared and submitted such a proposed news release, which it modified as requested by the

---

1. 15 U.S.C. §§ 15, 25.

2. 15 U.S.C. §§ 1, 2.

3. 15 U.S.C. § 14.

4. Jury trial is demanded.

Exchange. After acceptance thereof by the Exchange, Scientific issued the news release through normal channels, but the Exchange nevertheless refused to permit a resumption of trading in Scientific's securities and proposed to initiate steps to delist them.

In light of the foregoing factual allegations appellants assert that: the Exchange unlawfully exercised its monopolistic economic power through its rules and regulations, relating to suspension of trading in and delisting of securities, which are "vague, overly broad and arbitrary", provide no opportunity for fair hearing and are designed to use the power of monopoly to insulate and protect their trading specialists and other members. Appellants claim that the suspension of and the failure to permit resumption of trading in Scientific's securities were per se antitrust violations; that opportunity for fair hearing was denied; that the Exchange rules and regulations were arbitrarily, capriciously and discriminatorily applied to Scientific.

Appellants sought a temporary restraining order and preliminary and permanent injunctions against continued suspension in trading and against initiation by the Exchange of any delisting procedure against Scientific.

The very brief record before us appears to indicate determination by the district court of issues not yet ripe for decision, as well as some inattention to the Federal Rules of Civil Procedure.

Appellants claim, on appeal, that they were not afforded opportunity in the court below to brief or argue the Exchange's motion to dismiss and that they had reason to and did believe that the district court had taken under advisement only appellants' motion for preliminary injunction. The record and docket entries so indicate.

The transcript [5] and docket entries reveal that a hearing on appellants' motion for preliminary injunction was held on February 22, 1971 and that the trial court then took that motion under advisement. On April 14, 1971 the district court filed an opinion and order [6] denying appellants' motion for preliminary injunction and granting a motion by the Exchange to dissolve the temporary restraining order and to dismiss appellants' complaint. Both the docket entries and the record show that the Exchange's motion to dismiss,[7] an affidavit in opposition to the motion for preliminary injunction and in support of the motion to dismiss,[8] together with a brief in opposition to the motion for preliminary injunction and in support of the motion to dismiss [9] were filed of record on April 14, 1971, the date of the order of dismissal. The record and the docket entries disclose no service on appellants of the motion to dismiss, no brief of appellants opposing that motion and no hearing or opportunity for hearing thereon.

The Exchange's motion to dismiss, under F.R.C.P. 12(b) (1) was made upon the sole ground that the court lacked jurisdiction over the subject matter. This rule makes no provision for matters outside the pleading. The district court, however, quite apparently considered the testimony taken on the preliminary injunction hearing, as well as the contents of the affidavits of Philip L. West and Don Mayerson. The district court apparently regarded this motion as one based on a failure to state a claim upon which relief can be granted, under F.R.C.P. 12(b) (6). This is evident not only from its consideration of matters outside the pleading, but also from its treatment of the motion as one for summary judgment and disposition as provided in F.R.C.P. 56, and is demonstrated by its statement, "We do not believe that a substantial factual issue relating to an alleged anti-trust violation has been established." [10]

5. Document 5, p. 30.

6. Document 8.

7. Document 9.

8. Document 10.

9. Document 12.

10. Document 8, p. 8.

■ This treatment of Exchange's motion deprived appellants of the benefit of the provision in Rule 12(b) that, in such circumstances, " * * * all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The latter rule not only requires service of a motion thereunder at least 10 days before the time fixed for hearing, but also provides a right to the adverse party to serve opposing affidavits prior to the day of hearing. That this rule envisions depositions and interrogatories in any quest to determine whether there is a genuine issue as to any material fact is apparent from §§ (c) and (e) thereof.

Upon this state of the record we conclude that any expression upon ultimate questions of law would be premature and, perhaps, misleading. · The appellants were entitled to a hearing and determination in the court below upon the Exchange's motion, as filed under F.R. C.P. 12(b) (1). Should the Exchange, upon remand, elect to file motions under F.R.C.P. 12(b) (6) or 56(b) opportunity should be afforded appellants to meet the challenge.

■ Appellants, upon their motion preliminarily to enjoin both continued suspension of trading and the threatened initiation of delisting procedure, had the burden to show the essential criteria: (1) irreparable harm to appellants, absent such stay; (2) absence of substantial harm to other interested parties; (3) absence of harm to the public interest; (4) a likelihood that appellants would prevail on the merits. Nelson v. Miller, 373 F.2d 474, 477 (3rd Cir. 1967).

It is contended that the district court's refusal of injunctive relief was not only erroneous, but was, in the circumstances hereinbefore reviewed, so interwoven with its dismissal of the action as to require reversal and reconsideration on remand. There is possible rational basis for this argument if it be viewed solely in the context of the following language of the district court: "We do not believe that a substantial factual issue relating to an alleged anti-trust violation has been established. The plaintiffs have not shown a likelihood that their cause of action will prevail." [11] Upon the latter sentence the district court bottomed its denial of a preliminary injunction.

In essence, appellants mainly claimed that the Exchange had breached, was breaching and threatened further to breach the anti-trust laws by suspending trading in Scientific's securities, by continuing that suspension and by threatening to initiate delisting procedure. Appellees claim exemption, in these circumstances, under the Securities Exchange Act and the approved rules of the Exchange by implied repeal of the anti-trust laws.

The guiding principle to reconciliation of those statutes is that: "Repeal is to be regarded as implied only if necessary to make the Securities Exchange Act work, and even then only to the minimum extent necessary." Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).

Our review of the district court's action must determine whether the record pertinent to appellants' motion to enjoin supports its conclusion that appellants failed to meet their burden of showing a likelihood that they would prevail on the merits—"an estimate of the ultimate judicial result." [12] On this motion appellants were afforded full opportunity for hearing and the district court had properly before it matters beyond the complaint.

■ This record establishes that among further requirements of the Exchange for continued listing were maintenance of minimum net tangible assets available to common stock of $7,000,000 and an average net income after taxes of $600,000 for the past 3 years. Appellants admit that, at the time the Ex-

---

11. Document 8, p. 8.

12. Nelson v. Miller, supra, 373 F.2d p. 478.

change suspended trading its securities, Scientific had failed to meet these standards, and had failed, as well, to publish and disseminate to stockholders the required annual financial statements. The news release, issued on February 4, 1971, estimated a net loss of $43,000,000 for the fiscal year ending September 30, 1970 and a net worth, on the same date, of only $4,000,000. It contained no details of earnings or net worth. A tremendous preponderance of "sell" over "buy" orders followed the news release. In addition to communications, meetings were held among representatives of Scientific and the Exchange on January 13, February 3 and 8, 1971 to discuss and review the situation in an effort to find a suitable solution. Only two other companies, whose general financial positions were much better than Scientific's, were not delisted for failure to adhere to the established financial standards. At the time of hearing applicants made no showing that Scientific then was, or at any future date would be, able to meet the established financial standards of the Exchange.

Upon that record it cannot be said that the district court erred in concluding that it was not persuaded of the likelihood of appellants' ultimate success on the merits of their claim that the Exchange wrongfully suspended and continued to suspend trading in Scientific's securities.

The Exchange alone cannot delist Scientific's securities. It must apply to the Securities Exchange Commission. Section 12(d) of the statute [13] provides, in pertinent part:

"* * * A security registered with a national securities exchange may be withdrawn or stricken from listing and registration in accordance with the rules of the exchange and, upon such terms as the Commission may deem necessary to impose for the protection of investors, upon application by the issuer or the exchange to the Commission * * *."

The Commission's Rule 12d2–2(c) provides, in part:

"* * * [A] national securities exchange may file an application to strike a security from listing and registration, in accordance with its rules, on a date specified in the application, which date shall not be less than 10 days after it is filed with the Commission. The Commission will enter an order granting such application on the date specified in the application unless the Commission, by written notice to the exchange, postpones the effective date for a period of not more than 60 days thereafter: PROVIDED, HOWEVER, that the Commission, by written notice to the exchange on or before the effective date, may order a hearing to determine whether the application to strike the security from the listing and application has been made in accordance with the rules of the exchange, or what terms should be imposed by the Commission for the protection of investors."

An order of the Commission delisting securities is exclusively reviewable by a federal court of appeals. (15 U.S.C. § 78y). Courts have held, in three cases not involving anti-trust allegations, that the Commission has primary jurisdiction over a proceeding brought to protest a delisting application by the Exchange. See Fifth Ave. Coach Lines, Inc. v. New York Stock Exchange, 26 A.D.2d 49, 270 N.Y.S.2d 852; In the Matter of F. L. Jacobs Co., (No. 42,235, E.D.Mich., December 11, 1967, unreported); Fichtner v. American Stock Exchange, (C.A. 3–3349–C, N.D.Tex., February 6, 1970, unreported).

Again, it cannot be said that the district court erred in concluding that it was not persuaded of the likelihood of appellants' ultimate success on the merits of their claim that the Exchange wrongfully threatens to and will initiate a proceeding to delist Scientific's securities.

13. 15 U.S.C. § 78*l*(d).

The remaining contentions of appellants have been considered and found to be without merit.

For the reasons stated, that part of the district court's order of April 14, 1971 which denied appellants' motion for preliminary injunction will be affirmed and that part of its order which dismissed appellants' complaint will be reversed and the case remanded to the district court for further proceedings consistent with this opinion.