UNITED STATES of America, Plaintiff,

v.

Joseph ROACH, Robert Lewis, Linda Beckman, Kevin M. Blake, Amy Boissonneault, Robert Cassidy, Robert Cavanaugh, Theresa Clark, Michael J. Collins, Sheryl Fitzpatrick, Edward J. Gerlach, Dennis Green, Charles R. Haddon, Jr., Susan Langan, David J. Lytle, Nancy T. Major, John McCarthy, John E. McCormick, James Owen Patrick McWilliams, Stephen Miller, Joseph F. O'Hara, Katharine O'Keefe, Franco S. Pagananelli, Charles Rabich, William Charles` Raiser, Gene Rook, Eillen Siter, Elizabeth Snow, John Robert Sollesnes, Priscilla A. Taylor, James M. Trott, Kay Trudell, Howard Walton, Catherine Womack, Mary Ann Yorina, Defendants.

Civil Action No. 96–CV–5341.

United States District Court,
E.D. Pennsylvania.

Nov. 29, 1996.

James G. Sheehan, Assistant U.S. Attorney, Civil Division, Philadelphia, PA, Pamela K. Chen, Special Litigation Section, Civil Rights Division, U.S. Dept. of Justice, Washington, DC, Nadine M. Overton, U.S. Attorney's Office, Philadelphia, PA, Deval L. Patrick, Arthur E. Peabody, Jr., Mellie H. Nelson, U.S. Dept. of Justice, Civil Rights Division, Washington, DC, for Plaintiff.

James T. Owens, Owens, D'Ambrosio & Nescio, West Chester, PA, for Defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This preliminary injunction matter arises out of events that occurred on January 16, 1996 at the Reproductive Health and Counseling Center in which the above-named defendants ("Defendants") are alleged to have blocked the clinic's entrances for several hours. Plaintiff United States ("Plaintiff") moves for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and the Freedom of Access to Clinic Entrances Act of 1994 ("FACE"), 18 U.S.C. § 248.

A hearing was held on August 27, 1996. After consideration of the evidence and the briefs and arguments of counsel, the court makes the following:

### FINDINGS OF FACT

1. The Reproductive Heath and Counseling Center ("RHCC") is a reproductive health care facility located on the grounds of Crozer–Chester Medical Center in Upland, Pennsylvania. It provides medical services to patients, including the termination of pregnancies.

2. RHCC's clients come from various cities and states, including Delaware, New Jersey and Virginia.

3. RHCC is situated on Garden Drive, which is the private property of Crozer–Chester Medical Center, but is open for use by the public.

4. The RHCC building has three entrances/exits: (1) the front door on Garden Drive; (2) a side door; and, (3) a fire escape that leads from a door on the second floor of the building down to a first floor landing and then to the ground.

5. On January 16, 1996, beginning around 10:00 am, twenty to twenty-five individuals blocked all three entrances/exits to the clinic by placing themselves directly in front of the front and side doors, and on the landings and bottom steps of the fire escape.

6. The blockers refused to let anyone enter or exit the clinic, including Jane Green, Executive Director of RHCC, who attempted to leave by the fire escape. Ms. Green and others were only able to exit down the fire escape after appealing to the Defendant Roach.

7. The crowd dispersed shortly after Ms. Green descended down the fire escape. Approximately an hour later, sometime between 11:00 and 11:45 am, a number of individuals estimated to be fifty to sixty appeared. Again, the clinic's three entrances/exits were blocked by persons standing or sitting in front of each door and on the fire escape steps.

8. Others walked around the building and Garden Drive handing out leaflets and approaching cars that entered the clinic parking lot. Their objectives were to explain the evils of abortion and to discourage persons providing or seeking abortion services.

9. It was apparent that the Defendant Roach exercised a leadership role during the events of January 16, 1996.

10. A law enforcement official saw members of this group pounding on windows of cars entering the clinic parking lot. These individuals continued this conduct, even after the officer asked them to leave the area.

11. These events continued for five to six hours.

12. In addition to the Crozer–Chester Hospital Security force, official law enforcement personnel present on January 16, 1996 included officers from the Upland, Parkside and Brookhaven Police Departments, the De-

laware County Sheriffs' Department, the State Police, and the United States Marshals Service.

13. Two patrolmen attempted to assist a clinic client to gain access to the front door of the clinic, but were prevented from doing so by persons who joined hands and together fell to the ground.

14. Ten to fifteen people attempted to enter the clinic during this episode, but were unsuccessful.

15. A deputy sheriff twice read the 1984 injunction issued by the Delaware County Court of Common Pleas. A deputy United States Marshal twice read the 1989 injunction issued by the Honorable Clarence C. Newcomer.

16. The people blocking access did not disperse and had to be physically removed from the clinic's entrances/exits and carried by law enforcement officers to the Sheriffs' vans. A few walked to the vans on their own. Those taken into custody were transported to and processed in the Delaware County Courthouse in Media, Pennsylvania.

17. At the courthouse, the Sheriffs' Department performed the routine processing procedure by writing down the names, addresses and telephone numbers of those arrested. Their photographs were taken and a number was assigned to each person on the list. None of the individuals processed was charged with a crime.

18. As a result of the events which took place that day, twenty-five clients had to reschedule their procedures until at least after 5:00 pm, and after the police removed those blocking the entrances so that the physician and nurse anesthetist could enter the clinic. Six clients rescheduled for another day. One cancelled, and another never showed. There were no walk-in clients that day.

19. Prior to the events of January 16, 1996, RHCC had been subjected to similar incidents eighteen times in the last six years. The records suggest that Defendant Roach participated in fourteen of the incidents, and all but ten of the remaining thirty-four Defendants in this case have engaged in similar

conduct on prior occasions; the most recent being April 27, 1994.

20. None of the Defendants in this case were defendants in *Reproductive Health and Counseling Center v. Moran, et al.*, No. 82–3262 (Pa.Ct.Common Pleas, Del.County, February 10, 1984), the case in which Judge Bloom issued an injunction.

21. None of the Defendants in this case were defendants in *Jane Roe, et al. v. Operation Rescue, et al.*, C.A. No. 88–5157 (E.D.Pa. July 13, 1989), the case in which Judge Clarence C. Newcomer issued an injunction.

22. Ms. Green has never called security or local police when anti-abortion protestors picket on the public sidewalk near the clinic.

23. Defendant Roach was served through his attorney, James Owens on or before August 27, 1996. The other defendants, with the exceptions of Eillen Siter, Robert Cassidy, Robert Lewis, Priscilla Taylor, Theresa Clark, David Lytle, and William Charles Raiser were all personally served prior to August 27, 1996. Defendants Kevin Blake, Sheryl Fitzpatrick, and John McCarthy were all served by mail prior to August 27, 1996. At the August 27, 1996 hearing, Mr. Owens explained to the Court that he represents all of the defendants who had been served at that time.

24. Defendant Robert Lewis was personally served on September 3, 1996. Defendant Eillen Siter was personally served on September 4, 1996.

## DISCUSSION

The facts above were essentially undisputed at the hearing. The Defendants concede that none of the Defendants in the present action was named an original party in either the 1984 state action or the 1989 federal action. The Defendants argue, however, that both Joseph Roach and Robert Lewis are subject to the federal injunction issued by Judge Newcomer in 1989. Joseph Roach and Robert Lewis were held in contempt of the federal injunction by order of Judge Newcomer dated May 16, 1995.

Based on the foregoing, Plaintiff argues that all thirty-five Defendants violated FACE on January 16, 1996. Plaintiff con-

tends that the Defendants' conduct in blocking access to and egress from RHCC is specifically proscribed by the statute. Passed in 1994, FACE serves to protect reproductive health clinics, such as RHCC, from confrontational and sometimes violent protests targeted to intimidate or otherwise prevent these clinics from providing specific services, such as abortions. FACE was enacted in response to a persistent campaign conducted at numerous reproductive health clinics around the country to deter patients from receiving and doctors from performing abortions. To ensure safe and peaceful demonstrations, the statute subjects to both criminal and civil penalties those who:

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. § 248(a)(1) (1994).

The Attorney General can bring a civil action, if she has "reasonable cause to believe" that this statute has been violated. *Id.* § 248(c)(2). The statute permits the court to award appropriate relief, including "temporary, preliminary or permanent injunctive relief." *Id.* § 248(c)(1)(B).

Plaintiff argues that this court has jurisdiction to issue a third preliminary injunction despite the existence of two prior injunctions for three reasons. First, Plaintiff claims that because none of the Defendants in this action were original defendants in the *Roe* or *RHCC* actions or were acting in concert with the *Roe* or *RHCC* defendants on January 16, 1996, the United States cannot enforce the two prior injunctions. Although Judge Newcomer did find Defendants Lewis and Roach acting in concert with the *RHCC* defendants, Plaintiff has no evidence that there is a continuing connection. In addition, Plaintiff emphasizes that the conduct which triggered

the prior injunction was of a different nature and character than the conduct on January 16, 1996. Thus, Plaintiff concedes that there is insufficient evidence of concerted activity on the part of these Defendants which would make them liable for sanctions under the earlier injunctions.

Second, Plaintiff argues that the existence of two prior injunctions is irrelevant. The pertinent factors in a preliminary injunction analysis are: (1) likelihood of success on the merits; (2) irreparable harm to the plaintiff as a result of the defendant's conduct; (3) irreparable harm to the defendant if the preliminary injunction is issued; and (4) the public interest. The Plaintiff contends that the prior injunctions do not sufficiently affect the analysis of any one of these factors.

Finally, Plaintiff argues that FACE gives it the authority to seek a preliminary injunction regardless of the existence of the two previous injunctions. It is Plaintiff's position that the statute authorizes the Attorney General to seek injunctive relief when she reasonably believes that a clinic has been or will be injured as a result of conduct proscribed by the statute. Plaintiff argues that the Attorney General has acted directly pursuant to her authority under the statute.

Despite the arguments of Defendant that a preliminary injunction is not necessary in this case and that the facts cannot survive the four factor analysis for the issuance of a preliminary injunction, I am persuaded that FACE authorizes the issuance of a preliminary injunction under the circumstances presented here. I agree with the courts that have rejected challenges to the constitutionality of FACE [1] at least facially and as applied so far in this case.

Accordingly, the court arrives at the following:

### CONCLUSIONS OF LAW

1. The court has jurisdiction over this cause of action under the Freedom of Access

---

1. *See, e.g., United States v. Dinwiddie,* 76 F.3d 913 (8th Cir.1996); *United States v. Wilson,* 73 F.3d 675 (7th Cir.1995); *Cheffer v. Reno,* 55 F.3d 1517 (11th Cir.1995); *American Life League, Inc.* *v. Reno,* 47 F.3d 642 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995); *United States v. White,* 893 F.Supp. 1423 (C.D.Cal.1995).

to Clinic Entrances Act of 1994 ("FACE"), 18 U.S.C. § 248, and 28 U.S.C. § 1345 (1993).

2. The United States has standing to initiate this action under FACE, 18 U.S.C. § 248(c)(2)(A).

3. FACE provides, in relevant part:

(a) **Prohibited Activities.**—Whoever—

(1) by ... physical obstruction, intentionally injures, intimidates, or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services; ... shall be subject to the ... civil remedies provided in subsection (c). ...

18 U.S.C. § 248 (1994).

4. Subsection (c) of FACE directs that "the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief." 18 U.S.C. § 248(c)(B) (1994).

5. Congress enacted FACE pursuant to its authority under the Commerce Clause. U.S. Const. art. I, § 8, cl. 3. *See United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996); *United States v. Wilson*, 73 F.3d 675 (7th Cir.1995).

6. Congress also enacted FACE pursuant its authority under § 5 of the Fourteenth Amendment. *See United States v. White*, 893 F.Supp. 1423, 1435 (C.D.Cal.1995).

7. FACE does not chill First Amendment freedom of speech or religion on its face or as applied in the matter under consideration. *See Dinwiddie*, 76 F.3d at 921.

8. FACE is a reasonable time, place and manner restriction. *See American Life League*, 47 F.3d at 652–53. FACE does not proscribe all expressive conduct at reproductive health clinics. Indeed, by its terms, the Act cannot be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstrations) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1).

9. FACE is neither overbroad nor unconstitutionally vague. *See Dinwiddie*, 76 F.3d at 924. "Physical obstruction" is specifically defined as "rendering impassable ingress to or egress from a facility that provides reproductive health services." 18 U.S.C. § 248(e)(4). FACE defines "interfere with" as "restrict[ing] a person's freedom of movement." *Id.* § 248(e)(2). Neither physical injury to patients or staff nor actual entry into the clinic by the protestors is required for conduct to fall within the definition of "physical obstruction."

10. As stated above, violations of FACE may result in a preliminary injunction. In deciding whether to grant a preliminary injunction, however, a district court must carefully weigh the following factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary injunction will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary injunction will be in the public interest. *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985); *see Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994).

11. To satisfy the first factor of the preliminary injunction test, Plaintiff only needs to show a probability of prevailing on the merits, not that it is certain to win at trial. The court must make an "estimate of the ultimate judicial result." *Winkleman v. New York Stock Exchange*, 445 F.2d 786, 789 (3d Cir.1971). Plaintiffs presented evidence that Defendants blocked the three entrances/exits of the RHCC for several hours on January 16, 1996. Defendants physically obstructed access to the clinic to as many as fifteen people over the course of the afternoon. Plaintiffs demonstrated that the purpose of this conduct was to discourage clinic staff from providing, and clinic clients from receiving, reproductive health care services. Defendants refused to disperse after several requests by lawful authority. Plaintiff has shown a reasonable probability that it will prove at trial that Defendants violated

FACE on January 16, 1996 by physically obstructing access to RHCC.

12. A statutory provision authorizing preliminary injunctive relief may be an adequate substitute for a finding of irreparable injury to the plaintiff, the second element of a preliminary injunction analysis. *Government of the Virgin Islands v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 286 (3d Cir.1983) (citing *United States Postal Service v. Beamish,* 466 F.2d 804 (3d Cir.1972)); *United States v. Richlyn Lab., Inc.,* 827 F.Supp. 1145, 1150 (E.D.Pa.1992) ("[B]ecause Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action.") (citing *United States v. Odessa Union Warehouse Co-op.,* 833 F.2d 172, 176 (9th Cir.1987)). Indeed, when an injunction is sought pursuant to a statutory provision, this court has found irreparable harm when "probable cause exits to believe that the statute in question is being violated and that there is some reasonable likelihood of future violations." *Richlyn Lab.,* 827 F.Supp. at 1150 (citing *Air Freight Co. v. C.F. Freight, Inc.,* 882 F.2d 797, 803 (3d Cir.1989)).

13. Although the Defendants have not blocked the entrances to RHCC since January 16, 1996, based on the history of these Defendants, there is no assurance that it will not happen again. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (injunction not necessary if the defendant can demonstrate that " 'there is no reasonable expectation that the wrong will be repeated.' ") (quoting *United States v. Aluminum Co. of America,* 148 F.2d 416, 448 (2d Cir.1945)).

14. Because FACE authorizes this court to award preliminary injunctive relief when there exists a reasonable belief that the statute is being violated and when there is a reasonable likelihood of future violations, it will be presumed that Plaintiff will suffer irreparable harm if a preliminary injunction is not issued. Therefore, the second element is satisfied.

15. The third element also favors the issuance of a preliminary injunction. The requested injunction is designed to prohibit specific conduct not protected by the First Amendment. *See, e.g., United States v. Grace,* 461 U.S. 171, 177–78, 103 S.Ct. 1702, 1707–08, 75 L.Ed.2d 736 (1983) ("We have regularly rejected the assertion that people who wish 'to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.' ") (quoting *Adderley v. Florida,* 385 U.S. 39, 47–48, 87 S.Ct. 242, 247–48, 17 L.Ed.2d 149 (1966)). The requested injunction prohibits the Defendants from entering the private property of RHCC for any purpose other than to seek the medical services that RHCC offers. The proposed injunction does not preclude constitutionally protected activity, such as peaceful picketing, praying, and leafletting, on the public property beyond the private grounds of RHCC. *See, e.g., Grace,* 461 U.S. at 176, 103 S.Ct. at 1706 ("peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment"); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) (peaceful protesting protected by the Constitution). Therefore, because the proposed injunction does not prohibit all expressive activity, Defendants will not suffer irreparable harm if such a detailed injunction is issued. The third element is satisfied.

16. All preliminary injunctions issued by courts must serve the public interest. By enacting FACE, Congress specifically sought to promote public health and safety by prohibiting obstructive conduct that historically has injured, intimidated, and interfered with persons seeking to provide or obtain reproductive health services. *See* S.REP. NO. 103–117, 103rd Cong., 1st Sess. 2 (1993). Congress determined that FACE serves the public interest by ensuring that individuals who seek to provide or obtain reproductive health services can do so free from unlawful interference.

17. Plaintiff has met its burden of persuasion on each of the four prongs of the preliminary injunction standard. Therefore, a preliminary injunction will issue which binds the Defendants and "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or other-

wise." Fed.R.Civ.P. 65(d). Even the Defendants who had not been served as of the date of the hearing are bound by this preliminary injunction pursuant to the "in concert" provision of Rule 65(d) as soon as they receive notice of the injunction.

## ORDER

AND NOW, on this 29th day of November, 1996, in consideration of Plaintiff's Motion for Preliminary Injunction, Defendant's Response, and the evidence and arguments of counsel, and in accordance with the Findings of Fact and Conclusions of Law filed herewith, **IT IS ORDERED** that

1. Plaintiff's motion is **GRANTED,** and

2. Pending trial on the merits, the above-named defendants ("Defendants") and their agents, servants, employees, attorneys, and all individuals acting in concert with them who receive actual notice of this Order are prohibited from:

   a. Entering or remaining on the private property of the Reproductive Health and Counseling Center ("RHCC") which includes the clinic building and the surrounding grounds up to, but not including, the public sidewalks along Upland Street and President's Drive, except for the purpose of seeking or obtaining health services from RHCC or Crozer–Chester Medical Center;

   b. Standing, sitting, or lying in front of or otherwise blocking or obstructing the doors, fire escapes and entryways to RHCC so as to render impassable ingress to or egress from RHCC;

   c. Touching, or otherwise engaging in physical contact with any person or persons or car on the private property of RHCC, as described herein; and

   d. Violating the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (1994) ("FACE"), anywhere.

2. This preliminary injunction does not prohibit or preclude expressive activities that are constitutionally protected, including but not limited to the following conduct:

   a. Peacefully carrying picket signs on the public property in front of RHCC;

   b. Making speeches on public property;

   c. Speaking to individuals approaching the clinic;

   d. Handing out literature on public property; and

   e. Praying on public property.

3. Disobedience of this Preliminary Injunction or resistance to this Court's order may subject any Defendant or person within the scope of this Preliminary Injunction to criminal or civil prosecution for contempt of Court and the imposition of such sanctions as the Court deems proper. These sanctions may include incarceration or detention, the posting of a bond, monetary penalties, payment of damages to RHCC or aggrieved persons, payment of reasonable attorney's fees and costs to plaintiff, and other sanctions deemed appropriate by the Court.

4. The United States Marshall Service is empowered to enforce this Preliminary Injunction. The Marshal's Office shall:

   a. In circumstances that show good cause to believe that this Order is being violated, communicate any and all terms of the Order to persons at or on the property of RHCC by verbal means;

   b. Immediately report to the Court and plaintiff's counsel events and circumstances that show good cause to believe there have been violations of the terms of this Order;

   c. Keep such logs and records as necessary to record the events and circumstances that show good cause to believe there have been violations of the terms of this Order;

   d. If ordered by the Court, and authorized by law, detain for purposes of identification and investigation, and for purposes of transporting them to be brought before the Court, those persons determined by the Court based upon good cause shown, to have violated any term of this Order; and

   e. In its discretion, delegate the enforcement powers in this Order and yield responsibility for maintenance of the peace and the keeping of law and order to local and/or state law enforcement authorities.